# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| KRISTINA COMPTON and MONTE MOORE, Individually and for Others Similarly Situated,<br><br>v.<br><br>WORK MANAGEMENT, INC. and HIGH BRIDGE ASSOCIATES, INC. | Case No. 4:19-cv-04789<br><br>Collective Action Pursuant To 29 U.S.C. § 216(b) |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL OF LAWSUIT WITH PREJUDICE

Plaintiffs Kristina Compton (Compton) and Monte Moore (Moore), on behalf of themselves, and the Opt-In Plaintiffs (collectively "Plaintiffs"), file this unopposed motion to request approval of their settlement and dismissal of Plaintiffs' claims against Defendants Work Management, Inc. (WMI) and High Bridge Associates, Inc. (HBA) (collectively, "Defendants") (Compton, Moore, the Opt-in Plaintiffs, and Defendants together, the "Parties").

### I.      INTRODUCTION

The Parties seek Court approval of the Settlement Agreement which has been attached as Exhibit 1 and filed under seal.  The Parties' settlement covers all Defendants' employees who were allegedly paid straight time for overtime ("Settlement Collective Action Members") during the time period October 1, 2017 through and including March 31, 2019.  A list of the Settlement Collective Action Members and the amounts they will potentially receive if they opt-in to the settlement, is attached as Exhibit 1(B).  If the Settlement is approved, the Settlement Collective Action Members will receive a notice explaining the nature, terms and scope of the settlement, and the amount of compensation they will receive. The proposed notice is attached as Exhibit 1(A).  After the notice period, the settlement administrator, Simpluris ("Administrator") will send a check to each Settlement

Collective Action Members who returns a consent form, which represents their share of the proposed settlement based on the formula provided in the notice. Those Settlement Collective Action Members who negotiate and execute their checks will release their wage and hour claims against Defendants. Settlement Collective Action Members will have 60 days to opt in to the settlement and 60 days to execute and deposit their checks.

## II.     BACKGROUND

Compton filed this putative FLSA collective action lawsuit on December 10, 2019. *See* Doc. #1 ("Action"). Compton and Moore filed their First Amended Complaint on February 5, 2020. *See* Doc. # 15 ("Amended Complaint"). In the Amended Complaint, Plaintiffs alleged that Defendants paid them straight time for overtime without a guaranteed salary in violation of the FLSA. *Id.* Plaintiffs sought back wages, liquidated damages, attorney's fees, and costs. Defendants deny the allegations in the Amended Complaint, including that the Settlement Collective Action Members are entitled to any relief.

While this case was recently filed, the investigation and litigation against WMI and HBA have been ongoing for over a year. *See Gregory Sellers, et al. v. Exelon, et al.*, Case No. 1:18-CV-7179 (N.D. Ill.)[1] (the "*Sellers* lawsuit") and *Moore, et al. v. High Bridge Associates, Inc.* Case No. 19-CV-6240 (N.D. Ill.) (the "*Moore* lawsuit"). The *Sellers* and *Moore* lawsuits have been dismissed or amended to exclude these claims in accordance with the Settlement Agreement. In the *Sellers* lawsuit, plaintiffs and defendants settled (excluding WMI) their claims and moved to transfer Sellers' claims against WMI to the United States District Court, Southern District of Texas, Houston Division. *Sellers*, Case No. 1:18-CV-7179 Doc. 110. The court granted this request. *Id.* Doc. 111 attached as Exhibit 2. Further, in the *Moore* lawsuit, Monte Moore dismissed his claims against HBA without prejudice and became a Plaintiff to

---

[1] WMI was a party to this lawsuit.

this action by filing an amended complaint with Compton. The Action was filed to consolidate all of the underlying litigation for settlement purposes.

Prior to initiating good faith settlement discussions in the *Sellers* lawsuit, the parties had multiple disputes resulting in extended motion practice. The parties initiated good faith settlement discussions starting in May 2019. The Parties exchanged extensive information related to potential damages and liability issues, and eventually mediated their claims with Michael Dickstein, an experienced wage-and-hour mediator. While the case did not settle at mediation, the Parties continued negotiating and eventually agreed on the terms which are memorialized in the Settlement Agreement before this Court for approval.

### III. KEY TERMS OF SETTLEMENT

The Settlement Agreement obligates Defendants to pay a maximum settlement amount to settle the claims of the Settlement Collective Action Members in this Action ("Gross Settlement Amount"). As set forth in Exhibit 1, the Gross Settlement Amount covers all wage and hour claims covered by the Settlement Agreement, service awards, attorneys' fees and costs, and the administrative costs of administering the settlement. The Gross Settlement Amount excludes the employer's share of payroll taxes. The Net Settlement Amount represents the amounts that will be used to pay those Settlement Collective Action Members who elect to opt-in to the settlement. The Net Settlement Amount was calculated by deducting the service awards, attorneys' fees and costs and the administrative costs of administering the settlement.

The Administrator will send each of the Settlement Collective Action Members a personalized version of the notice documents attached as Exhibit 1(A). These documents clearly explain the nature, terms, and scope of the settlement, the release and the amount of compensation they may recover from the settlement. The Settlement Collective Action Members will have 60 days to consent to the settlement.

The Net Settlement Amount will be distributed on a pro rata basis to those individuals who opt-in to the settlement using the following agreed upon formula:

> Payments to Opt-in Plaintiffs shall be allocated from the Net Settlement Fund to all Opt-in Plaintiffs pursuant to the following distribution formula: 1) The number of shares for each Opt-in Plaintiff will be divided by the total number of shares for all members and then multiplied by 50% of the Net Settlement Fund (the "Share Allocation"); 2) Each Opt-in Plaintiff's damages will be divided by the total damages for all members and then multiplied by 50% of the Net Settlement Fund (the "Damage Allocation"); and 3) The total payment to each Opt-in Plaintiff is the sum of the "Share Allocation" and the "Damage Allocation." The Opt-in Plaintiffs number of shares shall be determined by allocating one share for each workweek in which the Opt-in Plaintiff worked over 40 hours. The total number of shares is the sum of the shares for all members, including shares for both Opt-in Plaintiffs and those who do not opt-in. The total damages for all members is the sum of the damages for all members, including damages for both Opt-in Plaintiffs and those who do not opt in.

The potential amount that each Settlement Collective Action Member who opts-in, is attached as Exhibit 1(B).

Settlement Collective Action Members who timely execute and return their consent will be mailed their Settlement Award by the Administrator by December 7, 2020. By consenting and cashing their checks, the individuals who opt-in to the settlement ("Opt-In Plaintiffs") will release Defendants (inclusive of the Releasees as defined in the Settlement Agreement) from any claims that were or could have been asserted based on the facts alleged in the Actions, including any claims for alleged failure to pay overtime wages under local, state, or federal law, including but not limited to the Fair Labor Standards Act, or any claim for liquidated or multiple damages, penalties, restitution, interest, attorneys' fees or costs, declaratory relief, equitable relief, or injunctive relief for any such claims, for the Settlement Time Period or October 1, 2017 through and including March 31, 2019.

The Administrator will treat one-half of the Settlement Award as taxable wages, subject to withholding and one-half as 1099 income. <u>Only</u> Opt-In Plaintiffs who cash their Settlement Award will be bound by the terms of the Settlement Agreement. The rights of Settlement Collective Action

4

Members who do not affirmatively choose to participate by returning their consent form will not be impacted.

## IV. THE COURT SHOULD APPROVE THE AGREEMENT AND DISMISS PLAINTIFFS' CLAIMS.

The Parties now seek the Court's approval of the Settlement Agreement attached as Exhibit 1. "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda v. Landry's Rests., Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The settlement must therefore be a fair and reasonable resolution of the Parties' bona fide dispute under the FLSA. *See Lynn's Food Stores*, 679 F.2d at 1355.

Here, the Settlement Agreement represents a fair and reasonable compromise of a bona fide dispute concerning the legality of Defendants' compensation practices with respect to the Settlement Collective Action Members. The Settlement Agreement should be approved.

### A. A Bona Fide Dispute Existed Between the Parties.

The Settlement Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Plaintiffs alleged that Settlement Collective Action Members were paid straight time for overtime without a guaranteed salary which violated the overtime requirements of the FLSA. Plaintiffs also maintained that any purported salary of the Settlement Collective Action Members was not reasonably related to the amount of compensation actually received. Defendants argued that these individuals were properly classified as exempt employees and thus not entitled to payment of overtime. Plaintiffs also alleged that Defendants acted in bad faith and willfully violated the FLSA. Defendants denied violating the FLSA and denied acting willfully or in bad faith.

Further, this case, in connection with the *Sellers* and *Moore* lawsuits, was settled after over a year of discovery, litigation and extensive work by the Parties. Counsel performed extensive research and

5

investigation regarding Defendants' pay practices, potential liability, financial viability and whether Defendants acted in good faith (or willfully) in their classification of the Settlement Collective Action Members. The Parties worked to resolve various complex, disputed issues, such as issues regarding conditional certification, discovery disputes, tolling, and damages calculations. And if the case were not settled, there would be extensive work to come, including dispositive motions, depositions, associated discovery disputes, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. The Parties performed significant work, which prepared both sides to recognize and appreciate the risks of proceeding if this case were not settled.

### B. The Settlement is Fair and Reasonable.

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). In addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Counsel has considerable experience prosecuting and settling FLSA cases, and in this case, were particularly well-informed as to the facts and circumstances of the litigation and the risk of not prevailing at trial. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to

rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted). Collective Action Counsel have served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

All Parties believe that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute and should be approved by this Court.

### i. The Agreement was Fairly and Honestly Negotiated

Here, the Agreement was the product of arms' length negotiations (including a full day mediation with experienced wage and hour mediator, Michael Dickstein), among experienced counsel. The settlement was reached after the Parties engaged in discovery regarding the Plaintiffs' payroll and policy data, extensive motion practice in the *Sellers* lawsuit, filing three separate motions for conditional certification against Defendants, and after the Parties engaged in settlement discussions for over seven months.

### ii. The Ultimate Outcome of the Ligation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' defenses. If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of a motion for collective action certification, summary judgment, a motion for decertification, and potentially a trial on the merits of unknown size and scope.

A trial on the merits would involve significant risks as to liability. Even if Plaintiffs could maintain a collective throughout trial, they would have to defeat Defendants' argument that Plaintiffs were properly classified as exempt employees and that they were paid on a salary basis. Further,

Defendants maintained that any additional compensation Plaintiffs' received was reasonably related to their guaranteed salary. Although Plaintiffs believe Defendants' case law and arguments are distinguishable from this case, and that they could ultimately establish Defendants' liability, this would require significant factual development and considerable risk.

Furthermore, even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would need to prove the amount of damages Plaintiffs suffered.

### iii. The Value of the Settlement is Significant

The benefit that Settlement Collective Action Members will receive from the settlement against the maximum they could have received if they had prevailed at trial is substantial. The Gross Settlement Amount represents 68% of the statutory damages for the approximate year and five months represented by the Settlement Agreement. The average gross payment to the Settlement Collective Action Members is over $6,200 and the largest gross amount that could be paid is almost $50,000.00.

The value of the settlement is even more meaningful in light of the numerous disputes between the parties, including: (1) whether the Settlement Collective Action Members were paid on a salary basis; (2) whether the Settlement Collective Action Members were paid overtime for any hours worked over forty in a workweek; (3) whether the Settlement Collective Action Members were exempt under one or more exceptions to the FLSA's overtime requirements; (4) whether the Settlement Collective Action Members alleged salary was reasonably related to the amount of compensation actually received; (5) whether Defendants' alleged FLSA violations were made in good faith; and (6) whether Defendants' alleged FLSA violations were willful. The resolution of each of these issues had the potential to eliminate or prejudice the litigation in Defendants' favor.

As such, the recovery before the Court is an outstanding result and more than fair and reasonable. In the present case, the proposed Settlement Agreement will provide individual settlement

payments to the Settlement Collective Action Members representing a substantial percentage of their claimed damages as calculated by Plaintiffs' counsel. The proposed method of allocation as described above is imminently fair to all. *Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.").

    The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### iv. **Plaintiffs and Their Counsel Support the Settlement**

    Plaintiffs' Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement Agreement. Based on Plaintiffs' Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions,

9

Plaintiffs' Counsel believes the Settlement Agreement is fair and reasonable. This factor supports approval of the Settlement Agreement. *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Plaintiffs approved the terms of the Settlement Agreement. Considering the foregoing, approval is warranted.

### C. The Attorneys' Fee to Collective Action Counsel is Reasonable.

Plaintiffs' attorneys' fees are part of the bargained for settlement. While the governing contingency fee agreement calls for Class Counsel to receive a contingency fee of 40%, the Parties agreed to set Class Counsel's fees at 37% of the Gross Settlement Amount inclusive of costs. *See* Exhibit 1. This is the agreement the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle

the amount of a fee."). Recent FLSA authority suggests that when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The parties reached the agreed upon fee after reaching a settlement that dwarfs the average overtime settlement, ensures Settlement Class Members who decide to accept it will be paid, and does not require those who wish to retain their claims to do anything. To the extent approval is necessary, it should be given here

Within the Fifth Circuit, customary contingency fees for class funds have ranged from 33.33% to 50%. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006). In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is within the range of 35 to 40%. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). Further courts routinely approve settlements that includes an agreed upon fee above what Plaintiffs, Class Counsel, and Defendants agreed to. *See Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving 40% fee in FLSA settlement) (Exhibit 3); *Whitlow v. Crescent Consulting, LLC*, No. 5:16-cv-01330, at ECF No. 189 (W.D. Okla. April 1, 2019) (same) (Exhibit 4); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (same) (Exhibit 5); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (same) (Exhibit 6); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same) (Exhibit 7); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%); *Winingear v. City of Norfolk, Va.*, No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (awarding 38.44%

($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery").

"The most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Defendants vigorously contested Plaintiffs' claims and denied that Plaintiffs were improperly paid, underpaid, or that any alleged damages are owed. Yet, as the Settlement Agreement reflects, the Settlement Collective Action Members are receiving a substantial amount (gross 68%) of their alleged back wages as a result of the settlement.

For these reasons, Plaintiffs believe a fee of 37% inclusive of costs is in line with the amount of fees approved in FLSA settlements and should be approved in this case.

## V. CONCLUSION

For the foregoing reasons, the Parties request that the Court approve the Settlement Agreement and order the Parties to comply with its terms. A proposed order is attached hereto.

Respectfully submitted,

By: /s/ *Richard M. Schreiber*
    Michael A. Josephson
    State Bar No. 24014780
    Federal ID No. 27157
    Richard M. Schreiber
    State Bar No. 24056278
    Federal ID No. 705430
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    rschreiber@mybackwages.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
Fed. Id. 21615
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I served a copy of this document on all registered parties and/or their counsel of record via the Court's CM/ECF system.

/s/ *Richard M. Schreiber*
Richard M. Schreiber

## CERTIFICATE OF CONFERENCE

  I hereby certify that I conferred with Counsel for Defendants regarding the relief sought in this Motion and they are **not** opposed.

                */s/ Richard M. Schreiber*
                Richard M. Schreiber